*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re B. J. PHILLIPS, Minor.

UNPUBLISHED
August 24, 2023

No. 362969
Wayne Circuit Court
Family Division
LC No. 2019-000805-NA

Before: O'BRIEN, P.J., and CAVANAGH and MARKEY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her minor child, BJP, under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days and custody not sought), (b)(*i*) (parent's act caused physical injury or abuse), (g) (failure to provide proper care or custody), (j) (reasonable likelihood that child will be harmed if returned to parent), and (k)(*i*) (parent abused child by abandonment). We affirm.

## I. BACKGROUND

Respondent is the biological mother of BJP. In April 2019, the Department of Health and Human Services (DHHS) filed a petition seeking temporary jurisdiction over BJP. The petition alleged that respondent neglected and physically abused BJP. BJP told a Children's Protective Services specialist that respondent hit him with a belt and an extension cord. The DHHS alleged that respondent left marks on BJP by hitting him "in the head and on other parts of his body." The DHHS further asserted that respondent had substance abuse issues and that her drinking problem caused her to physically abuse BJP. Additionally, the petition indicated that respondent had not provided BJP with "adequate food, clothing, or shelter" since November 2018 and that BJP was in his maternal grandmother's care.

The trial court held an adjudication trial in July 2019 and concluded that it had jurisdiction over BJP relative to respondent. The trial court then ordered respondent to follow a treatment plan. The court directed respondent to complete parenting classes, attend individual counseling, complete drug and alcohol screens, undergo a psychological evaluation, acquire and maintain a legal source of income, obtain and maintain adequate housing, attend visitations with BJP, and maintain contact with her caseworker. In August 2020, the DHHS filed a supplemental petition seeking to terminate respondent's parental rights, alleging that respondent neglected to care for

-1-

BJP, that she did not have suitable housing or a legitimate source of income, that she failed to complete her treatment plan, and that respondent had failed to maintain regular contact with the DHHS and her foster-care worker since August 2019.

In November 2021, a termination hearing was held, and the trial court ruled that the statutory grounds for termination were established by clear and convincing evidence under MCL 712A.19b(3)(a)(*ii*), (b)(*i*), (g), (j), and (k)(*i*). The court then held a best-interests hearing and found by a preponderance of the evidence that termination of respondent's parental rights was in BJP's best interests despite the fact that he was in relative placement. The trial court subsequently entered an order terminating respondent's parental rights to BJP. The order also provided that the court found that "[r]easonable efforts were made to preserve and unify the family."

## II. REASONABLE EFFORTS TO REUNIFY FAMILY

On appeal, respondent argues that the DHHS failed to make reasonable efforts at reunifying her with her child. Respondent contends that the DHHS had an obligation under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., to ensure that respondent was not excluded from the benefit of services offered by the DHHS and that it failed to accommodate her disability. "We review the trial court's findings regarding reasonable efforts for clear error." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

The DHHS typically has an affirmative duty to make reasonable efforts at reunification before seeking the termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017); see also MCL 712A.18f(3)(b); MCL 712A.19a(2). To that end, the DHHS in this case created a case service plan that included a schedule of services to be provided to respondent. See *In re Hicks/Brown*, 500 Mich at 85-86. When providing services, the DHHS must give a respondent a reasonable time to make changes and benefit from the plan. *In re Mason*, 486 Mich 142, 159; 782 NW2d 747 (2010). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The ADA does not provide a defense to proceedings to terminate parental rights, *In re Terry*, 240 Mich App 14, 24-25; 610 NW2d 563 (2000), but it does require the DHHS to reasonably accommodate a disabled parent when providing services to achieve reunification and avoid termination of parental rights, *In re Hicks/Brown*, 500 Mich at 86, citing 42 USC 12132 and 28 CFR 35.130(b)(7). The DHHS's obligations under the ADA dovetail with its affirmative duty under Michigan's Probate Code "to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85-86, citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). The parent bears the burden to show that he or she would have fared better with an accommodation. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). Failure to make reasonable efforts toward reunification may prevent the DHHS from establishing statutory grounds for termination. *In re Newman*, 189 Mich App 61, 65-68; 472 NW2d 38 (1991).

A claim that a parent's rights under the ADA were violated must be raised well before the dispositional hearing to terminate parental rights, and the failure to do so constitutes a waiver. *In re Sanborn*, 337 Mich App 252, 263 n 3; 976 NW2d 44 (2021). There is no indication in the record that respondent raised the issue that the DHHS failed to accommodate her mental health issues;

respondent instead makes the claim regarding the DHHS's alleged violation of the ADA for the first time on appeal. Thus, the issue was waived.

Furthermore, the DHHS cannot accommodate a disability of which it is unaware; therefore, before the DHHS can be required to provide reasonable accommodations for purposes of the ADA, the DHHS must have knowledge that the parent is disabled, either because that disability is obvious or because the parent has informed the DHHS of the disability. *In re Hicks/Brown*, 500 Mich at 87. On appeal, while respondent makes a passing reference to broadly having a "mental illness," she does not identify the specific nature of her disability for which the DHHS should have been aware. The record does not reflect that the DHHS was aware of any particular disability that was impairing respondent. Additionally, during her testimony at the termination hearing, respondent stated that she "[does not] have a mental illness." Therefore, because there is no evidence that the DHHS was aware or should have been aware of any purported disability, assuming the existence of a disability, we conclude that the DHHS was not required to make reasonable accommodations in providing services.

Moreover, the DHHS provided respondent with reasonable reunification services. The DHHS supplied respondent with information and services to complete her drug and alcohol screens. The DHHS also made referrals for parenting classes and a parenting coordinator multiple times in 2020. Respondent was additionally offered regular in-person visitations with BJP and then via ZOOM when the COVID-19 pandemic set in. The DHHS had offered respondent bus passes to attend the visitations. When asked if she wanted to be rereferred for any services, respondent replied that "she has already completed her classes and she did not want re-referrals." Respondent was also referred to substance abuse therapy, a health clinic, and the Clinic for Child Study. Additionally, the DHHS made several requests to assess respondent's housing, and each time, respondent would "den[y] it." We note that the DHHS attempted to contact respondent many times over the course of the proceedings, but respondent did not answer her phone and frequently changed her number. On the occasions when respondent would attempt to contact the DHHS, she would call from random phone numbers, and when the DHHS tried to call back, the line would be disconnected. The DHHS could not refer her to more services without having respondent's phone number or permanent address. Respondent consistently failed to maintain contact with her caseworkers as required by her treatment plan. Thus, because reunification services were offered and respondent did not maintain any meaningful contact with the DHHS and remained effectively unreachable throughout much of the proceedings, we conclude that the trial court did not clearly err when it found that reasonable efforts at reunification had been made under the circumstances.

III. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination was in BJP's best interests. In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to termination proceedings:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights

to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

Respondent does not challenge the statutory grounds for termination; therefore, the trial court's findings regarding the statutory grounds for termination stand. See *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015) (stating that this Court will not grant relief when the appealing party fails to challenge the basis of a trial court's ruling).

In *In re Mota*, 334 Mich App at 321, this Court discussed the best-interests analysis, stating as follows:

With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

The DHHS presented evidence that respondent hit BJP in the face with a belt while attempting to spank him. Additionally, respondent admitted to having anger management issues. Specifically, in June 2020, respondent got into an altercation with her boyfriend and broke several windows of his home. Respondent admitted to drinking half a bottle of tequila before the fight. She also conceded that she has a "temper" and will hit anyone who "come[s] in [her] face." Thus, we conclude that BJP would be placed at risk of harm in respondent's care, making it in the child's best interests to terminate respondent's parental rights.

BJP has lived with his maternal grandmother since he was an infant, and his grandmother directly took care of BJP since the beginning of the proceedings. Although placement with a relative generally weighs against termination, we agree with the trial court that termination was nonetheless necessary in order to provide the child with permanency and stability. See *In re Mota*, 334 Mich App at 321 (a child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination). Respondent attended one visitation during the first year of the proceedings and failed to visit BJP throughout the remainder of the proceedings.

Additionally, respondent only completed one drug and alcohol screening since her treatment plan was ordered in 2019. While respondent testified at the termination hearing that she

had a source of income, she refused to give any details about her job to the DHHS or to provide the DHHS with proof of her earnings. At the most recent hearing, BJP's caseworker testified that respondent told her that she is unemployed. Likewise, while respondent claimed to have suitable housing, she failed to notify the DHHS of the address of her apartment until during the termination hearing, which spanned several days. And when the DHHS then attempted to complete an assessment of respondent's housing, it was denied entry by respondent. Further, although respondent allegedly found independent housing, she also testified that she was still living with her boyfriend. Respondent had since 2019 to work on her treatment plan but only began to make efforts to complete it immediately before the termination hearing commenced. Under these facts, we conclude that the trial court did not clearly err by finding that it was in BJP's best interests for respondent's parental rights to be terminated.

We affirm.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Jane E. Markey